IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEPHENY ANN FANNING,

                 Plaintiff,

  v.

                                                        OPINION and ORDER

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security                  22-cv-255-jdp
Administration,

                 Defendant.

---

      Plaintiff Stepheny Ann Fanning seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Fanning was not disabled within the meaning of the Social Security Act. Fanning contends that administrative law judge (ALJ) Deborah Ellis erred by failing to adequately explain two things: (1) why she disagreed with expert opinions that Fanning was limited to occasional overhead reaching; and (2) why she did not find greater restrictions on Fanning's ability to stand and walk.

      The court will affirm the commissioner's decision. The ALJ adequately explained both conclusions and relied on substantial evidence in doing so.

## BACKGROUND

      Fanning applied for disability insurance benefits, alleging disability beginning in April 2016. R. 631.[1] In a September 2021 decision, the ALJ found that Fanning suffered from the

---

[1] Record cites are to the administrative transcript located at Dkt. 9.

following severe impairments: obesity, disorders of the knee joints, bilateral carpal tunnel syndrome, left shoulder tendinitis, degenerative joint disease of the left acromioclavicular (AC) joint, and impingement syndrome of the left shoulder. R. 632.[2] Based on these impairments, the ALJ found that Fanning had the residual functional capacity (RFC) to perform light work, with the following limitations:

- no more than frequent climbing ramps or stairs
- no more than occasional climbing ladders
- no more than occasional kneeling or operating foot controls bilaterally
- no more than frequent reaching overhead with her left upper extremity or handling or fingering with her upper extremities bilaterally.

R. 635. Relying on the testimony of a vocational expert, the ALJ found that Fanning could perform her past relevant work as a meat-counter clerk, so she wasn't eligible for benefits. R. 644.

Fanning now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

---

[2] The same ALJ had issued a less restrictive RFC in 2018, finding that Fanning could perform medium work. R. 13–23. Fanning appealed that decision to the district court, but the parties agreed to a remand before the court issued a decision. *See Fanning v. Saul*, No. 19-cv-559-jdp (W.D. Wis.), Dkt. 15.

ANALYSIS

Fanning challenges two findings in the ALJ's RFC: (1) Fanning was capable of frequent overhead reaching; (2) Fanning was capable of light work with no limitations in standing or walking other than those related to ramps, stairs, ladders, foot controls, and kneeling. For the reasons explained below, the court concludes that both of those portions of the RFC are supported by substantial evidence.

**A.  Overhead reaching**

Consulting physicians Pat Chan and Mina Khorshidi offered an opinion that Fanning "should avoid performing work-related activities that require frequent overhead lifting/reaching" because of left shoulder pain. R. 235. Nurse practitioner Kristina Roou marked "yes" for the question, "Does your patient have significant limitations in repetitive reaching, handling, or fingering?" R. 1259.

The ALJ rejected both of those opinions and found that Fanning was capable of frequent overhead reaching. She provided the following reasons:

- Fanning did not seek treatment for her left shoulder until more than four years after her alleged onset date.

- Examinations before June 2020 showed no abnormalities with Fanning's left shoulder.

- Fanning's examinations consistently showed that she had full strength and full range of motion in her left shoulder, even around the same time of a July 2020 imaging showing moderate AC joint arthrosis and calcified bodies projecting over the rotator cuff.

- Roou didn't provide an opinion about the degree of Fanning's overhead reaching limitation.

- Roou's own examinations showed that Fanning had no limitations in her range of motion or her upper-body strength and no other abnormalities with her upper extremities.

3

R. 641–42.[3]

Fanning contends that most of the ALJ's reasons are not based on medical evidence but simply are an example of the ALJ "playing doctor," that is, interpreting medical records without the benefit of an expert opinion. The court understands Fanning's main point to be that the ALJ did not rely on an expert opinion to reach her conclusion about Fanning's overhead reaching abilities and she went beyond her authority by relying directly on the medical records to reject Chan and Khorshidi's opinion.

Fanning's argument reveals the tension between different lines of authority and precedent. On one hand, ALJs may not designate themselves as another expert in the case, so the court of appeals has admonished ALJs against relying on their own interpretations of complex medical records. *See Durham v. Kijakazi,* 53 F.4th 1089, 1095 (7th Cir. 2022); *Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014). On the other hand, it is well established that ALJs are required to evaluate whether the medical evidence supports an expert's opinion, 20 C.F.R. § 404.1527(c)(3), and they are *not* required to rest their decisions on a particular expert opinion, *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

In numerous previous decisions (which Fanning's counsel ignored), this court has reconciled these authorities by holding that ALJs are prohibited from interpreting medical records only when doing so actually requires medical expertise.[4] This view is consistent with

---

[3] Fanning doesn't address the ALJ's reasons for rejecting Roou's opinion, so the court won't discuss those reasons further.

[4] *See, e.g., Ruscin v. Saul*, No. 20-cv-605-jdp, 2021 WL 1747917, at *1 (W.D. Wis. May 4, 2021); *Luzar v. Saul*, No. 19-cv-1018-jdp, 2020 WL 5249225, at *3 (W.D. Wis. Sept. 3, 2020); *Callaway v. Saul,* No. 19-cv-818-jdp, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020);

4

more recent circuit precedent in which the court of appeals has concluded that it was appropriate for the ALJ to rely directly on medical records without expert assistance when the information in the records "was conveyed in layman's terms . . . rather than the 'medical mumbo jumbo' we've warned judges not to interpret." *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023).

In this case, Fanning points to no records that the ALJ relied on that would require expertise to interpret. Rather, the ALJ relied primarily on physical examinations showing full strength, full range of motion, and no abnormalities with Fanning's left shoulder. The ALJ did not need another expert opinion to find that the examinations undermined Fanning's testimony and the opinions of Chan and Khorshidi. It was reasonable for the ALJ to conclude that Fanning would have some strength or range-of-motion limitations if she were unable to frequently reach overhead.

Fanning also criticizes the ALJ for relying of her four-year delay in seeking treatment for her shoulder as evidence of that she can frequently reach overhead. Fanning cites Social Security Ruling 16-3p for the proposition that the ALJ was required to ask her *why* she didn't seek treatment, because it may be that additional treatment was not available or that Fanning couldn't afford treatment. But the court of appeals has rejected Fanning's interpretation of 16-3p. The rule is that the ALJ must consider possible reasons for lack of treatment, not that she must ask the claimant about the reasons. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). In any event, the reasons Fanning identifies for requiring the ALJ to seek clarification

---

*Wilke v. Berryhill*, No. 18-cv-549-jdp, 2019 WL 1177726, at *4 (W.D. Wis. Mar. 13, 2019); *Ross v. Berryhill*, No. 18-cv-215-jdp, slip op. at 4 (W.D. Wis. Dec. 14, 2018). Fanning's counsel was also counsel in some of these cases, so there is little excuse for the failure to acknowledge the court's rule.

from her do not apply in this case. Fanning would have had no way of knowing what treatment options were available for her shoulder before she told a healthcare provider about her problem, so that could not have been a reason she failed to complain about her shoulder. An inability to afford treatment is not a plausible reason either. Fanning's medical records show that she was receiving treatment for other conditions at the same time, and she identifies no reason why she would have treated her shoulder differently.

The ALJ's finding that Fanning could reach overhead frequently is supported by substantial evidence. Fanning is not entitled to a remand on this issue.

**B. Standing and walking**

The ALJ's RFC assessment doesn't expressly say how long Fanning could stand or walk. But the ALJ did find that Fanning was capable of performing light work, which Social Security Ruling 83-10 defines to mean that the claimant can stand or walk, off and on, for a total of approximately six hours of an eight-hour workday.

Fanning contends that the RFC assessment doesn't adequately account for her knee impairment. She cites her own testimony that she cannot walk or stand for more than ten minutes at a time and that she consistently uses a walker, along with medical records showing that she received multiple cortisone injections in her knees and documenting that she has an antalgic gait. Fanning says that the ALJ failed to address that evidence.

Fanning is simply incorrect. The ALJ acknowledged the evidence that Fanning cites, but the ALJ gave good reasons for declining to impose greater restrictions on Fanning's walking and standing. Specifically, the ALJ acknowledged Fanning's testimony and the treatment she received, but the ALJ was persuaded by medical records showing that Fanning's gait was normal during most examinations, she had normal motor strength in her lower extremities, her sensory

6

functioning was normal in her legs, and she had no instability in her knees. R. 643. As for Fanning's use of a walker, the ALJ observed that no medical provider had prescribed an assistive device. *Id.*

The ALJ's reasons for rejecting greater walking and standing restrictions are similar to the ALJ's reasons for rejecting greater overhead reaching decisions: greater restrictions were inconsistent with Fanning's examinations. Fanning neither challenges the factual basis for the ALJ's reasons nor explains why the reasons are inadequate. The court concludes that it was reasonable for the ALJ to find that Fanning's medical records did not support greater walking or standing restrictions. So the court will affirm the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFRIMED. The clerk of court is directed to close the case and enter judgment in the commissioner's favor, dismissing the case with prejudice.

Entered September 22, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge